IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HASSAN SABREE, by his mother and next friend, Hana Sabree; CATHERINE MEADE, by her father and next friend, Robert A. Meade; JOSEPH FRAZIER, by his mother and next friend, Patricia Frazier, for themselves and all others similarly situated. | : : : : : C.A. No. _____ |
| Plaintiffs, | : : Class Action |
| v. | : : |
| FEATHER O. HOUSTOUN, in her official capacity as Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, | : : : : |
| Defendant. | : : |

**COMPLAINT**

**I.     Introduction**

1. Plaintiffs, and the class they seek to represent, are persons with mental retardation who live in the community with their family or other caregivers who are increasingly unable to give them the support they need. Plaintiffs are on a waiting list for community residential retardation services which they are entitled to receive under the federal Medical Assistance program. Without these community-residential mental retardation services, they are increasingly at risk of injury, institutionalization, and regression.

2. The Department of Public Welfare, operated by Defendant Feather O. Houstoun, has violated Plaintiffs' rights under the federal Medical Assistance law by: (a) not providing small, community-based Intermediate Care Facilities for the Mentally

Retarded (ICF/MRs) and depriving Plaintiffs of those services to which they are entitled; and (b) failing to assure that Plaintiffs receive appropriate ICF/MR services with reasonable promptness.

## II. Jurisdiction and Venue

3. This Court has jurisdiction to decide Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 1343.

4. Plaintiffs' claims are authorized by 42 U.S.C. §1396 et seq., 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

5. Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(2) since a substantial part of the events that give rise to this Complaint occurred in this district.

## III. Parties

6. Plaintiff Hassan Sabree is a 22 year-old man with Down's Syndrome resulting in moderate mental retardation. He also has mild hearing loss and severe psoriasis. He resides in Philadelphia, Pennsylvania. He brings this action with and through his mother and next friend, Hana Sabree.

7. Plaintiff Joseph Frazier is a twenty-three year old man with moderate mental retardation and autistic tendencies. He resides in Philadelphia, Pennsylvania. He brings this action with and through his mother and next friend, Patricia Frazier.

8. Plaintiff Catherine Meade is a 30 year-old woman with mental retardation. She lives in Montgomery County, Pennsylvania. She brings this action with and through her father and next friend, Robert A. Meade.

9. Defendant Feather O. Houstoun is the Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania (DPW). DPW has sole responsibility for administering Pennsylvania's Medical Assistance program. See 42 U.S.C. § 1396a(a)(5); 55 Pa. Code § 101.1(e). Defendant is responsible to assure that the Medical Assistance program is operated in compliance with federal law. Defendant Houstoun is sued in her official capacity only for actions and omissions taken under color of state law.

### IV. Class Action Allegations

10. Plaintiffs bring this action on their own behalf and on behalf of a class composed of all Pennsylvanians with mental retardation living in the community who are entitled to, in need of, but not receiving appropriate community residential and habilitative programs under the Medical Assistance program.

11. The prerequisites of Federal Rule of Civil Procedure 23(a) are satisfied.

   a. The size of the class is so numerous as to make joinder of all class members impracticable.

   b. Class members have limited financial resources and are unlikely to bring individual actions.

   c. There are questions of law and fact common to the class, including: whether DPW has discouraged, prohibited or failed to promote the development of ICF/MRs; whether DPW has deprived Plaintiffs and the class of those services to which they are entitled; and, whether DPW has failed to assure that Plaintiffs receive appropriate services with reasonable

        promptness.

    d.    Named Plaintiffs' claims are typical of the claims of class members.

    e.    Named Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interests adverse to or in conflict with those of other class members. Plaintiffs' attorneys have extensive experience in class action, civil rights, and Medical Assistance litigation.

12.    This action can proceed as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to all members of the class, making final declaratory and injunctive relief appropriate with respect to the class as a whole.

V.    **Facts**

    A.    **Plaintiffs' Service Needs**

    **Joseph Frazier**

13.    Plaintiff Joseph Frazier is a twenty-three year old man with moderate mental retardation and autistic tendencies.

14.    Mr. Frazier is eligible for and a recipient of Medical Assistance.

15.    Mr. Frazier currently resides with his mother Patricia Frazier and his 76 year-old grandmother in the family home.

16.    Because of his mental retardation, Mr. Frazier requires supervision at all times. He cannot be left alone for even brief periods of time without risk to his personal safety. If unattended, he would leave the house and would wander into the street;

he has no awareness of the danger of being hit by an automobile. If unsupervised, he also is at risk of injuring himself by turning on the stove. He would not know what to do in the event of a fire or other emergency. Although he has been cautioned against it, he would readily open the door to a stranger. He cannot prepare meals or shop for food without supervision. He cannot manage his own finances and does not have any sense of the value of money. He cannot use public transportation independently.

17. Mr. Frazier lives with his mother, Patricia Frazier, and his 76 year-old grandmother, who is currently undergoing treatment for cancer. Mr. Frazier's mother works full time, and during those hours when she is away from home, his grandmother is his primary caregiver.

18. Several years ago, Mr. Frazier burnt himself by turning on the stove. At that time his mother requested day supports and residential services for him. She was told that he was placed on the waiting list.

19. Mr. Frazier receives no regular program of mental retardation services. He sits home all day doing nothing except listening to the radio. Since graduating from high school, Mr. Frazier's skills have regressed. He has shown increased frustration and increased maladaptive behaviors. It is increasingly difficult for his mother to take him out in public.

20. Mr. Frazier requires a comprehensive program of mental retardation services to maintain and improve his life skills.

21. Mr. Frazier's needs can be met in a small, community mental retardation program, and although he is entitled to such services, he remains on a waiting list.

**Catherine Meade**

22. Plaintiff Catherine Meade is a thirty-year-old woman with moderate mental retardation and some mental health issues.

23. Catherine Meade is eligible for and a recipient of Medical Assistance.

24. Catherine currently resides with her father, Robert A. Meade, and her mother, Karen Meade, in their family home in Montgomery County.

25. As a result of her mental retardation, Catherine requires supervision at all times and requires assistance with many aspects of daily living. For safety reasons, she cannot be left alone even for brief periods of time. She would not know what to do in the event of fire or other emergency. Although she has been cautioned against it, she might readily open the door to a stranger. She cannot shop for or prepare meals without supervision. She cannot shop for clothing or other personal items without help. She cannot manage her finances and does not have any sense of the value of money. She cannot use public transportation on her own.

26. Mr. Meade, age 60, has primary care giving responsibilities for his daughter. Until recently, Mrs. Meade worked full time outside the home. (She is now working full time from the home.) Approximately eight to nine years ago, Mr. Meade arranged to work from his home in order to have a sufficiently flexible work schedule to meet Catherine's significant needs. This has substantially

reduced his income and job opportunities.

27. Catherine receives extremely limited services from the mental retardation system. In June 2001, she began attending a pre-employment group which was generally fewer then three hours per week. In January 2002, Catherine began receiving supportive employment services four hours per day, two days per week. Additionally, she attends a mental health program two days per week from 9:00a.m. to 2:30p.m.

28. Mr. Meade provides transportation for Catherine to and from the pre-employment program, and he provides supervision at those times when she is not in a program.

29. Catherine has a strong desire to move to a group home and to become as independent as possible. She needs increased habilitative services to maintain and improve her life skills. Additionally, she needs greater opportunities for interaction with her peers and for activities which would provide stimulation.

30. For many years, the Meades have requested residential services for their daughter.

31. In December 1999, the Montgomery County Office of Retardation completed an assessment of Catherine and determined that she was in critical need of mental retardation services.

32. Catherine's needs can be met in a small, community-based ICF/MR. Although she is entitled to such services, she has never been offered them and has been waiting for such services for many years.

**Hassan Sabree**

33.  Plaintiff Hassan Sabree is a twenty-two year old man with Down's Syndrome, moderate mental retardation, a mild hearing loss, and severe psoriasis.

34.  Hassan Sabree is eligible for and receives Medical Assistance benefits.

35.  Mr. Sabree resides with his mother, Hana Sabree, in the family home.

36.  Hana Sabree holds a full-time job, and Mr. Sabree remains in the home all day alone.  Although his mother has drilled him in fire safety, she has concerns that he is at risk in the event of fire.  Mr. Sabree has no program of services to address his MR needs.  He has no day program, no camp program, no social program, and no recreational program.  He lacks the habilitation that he needs to reach his potential and he has regressed in his skills since graduating last spring from high school where he received special education services.

37.  Mrs. Sabree provides for Mr. Sabree's daily care including cooking, cleaning, laundry, shopping, assisting him with hygiene, and the extensive daily application of medicine for his psoriasis.

38.  Mrs. Sabree is finding it increasingly difficult to meet the demands of her full time job and the demands of caring for her son.

39.   Prior to Mr. Sabree's graduation, Mrs. Sabree applied for a community residential mental retardation program for Mr. Sabree.  In April 2002, Ms. Sabree formalized her request for residential services.  Ms. Sabree was informed by her caseworker that it would be months or years before Mr. Sabree would receive residential services.  Mr. Sabree remains on the waiting list for such a program.

40. Mr. Sabree's needs can be met in a small, community mental retardation program, and although he is entitled to such services, he remains on a waiting list.

B. **Pennsylvania's Mental Retardation System**

41. In Pennsylvania, provision of services to persons with mental retardation is governed by the Mental Health and Mental Retardation Act of 1966 (MH/MR Act), 50 Pa. Cons. Stat. Ann. §§ 4101-4704.

42. Under the MH/MR Act, DPW must assure that Pennsylvanians with mental retardation receive adequate services. 50 Pa. Cons. Ann. § 4201(1).

43. DPW's mental retardation policy is based on the "principle of normalization which defines the right of the individual with mental retardation to live a life which is as close as possible in all aspects to the life which any member of the community might choose. For an individual with mental retardation who requires a residential service, the design of the service shall be made with the individual's unique needs in mind so that the service will facilitate the person's ongoing growth and development." 55 Pa. Code § 6400.1.

44. Under the MH/MR Act, the County Office of Mental Retardation (County OMR) (through its designees, known as base service units) serves as the point of entry into Pennsylvania's mental retardation system for persons who want to apply for services. 55 Pa. Code § 6201.13(a).

45. Persons seeking ICF/MR services must do so through their County OMR. All referrals to one of Pennsylvania's ICF/MRs must be approved by the County

OMR. 55 Pa. Code § 6000.821(2).

46. For many years, the County OMRs have been unable to provide community-based residential services to all persons with mental retardation who apply for and are eligible for such services. Instead, the County OMRs have developed waiting lists of persons with mental retardation who need residential placements.

47. Each year, the County OMRs provide DPW with information about their inability to provide community residential services to all eligible applicants and about their waiting lists for these services.

C. **The Medical Assistance Program and Intermediate Care Facilities for the Mentally Retarded**

48. The Medical Assistance program, authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a joint federal-state program. Medical Assistance is a cost-sharing arrangement under which the federal government reimburses a portion of the expenditures incurred by states that elect to furnish Medical Assistance to individuals whose income and resources are insufficient to cover the costs of their medical care.

49. States are not required to participate in the Medical Assistance program. If they choose to do so, they must adopt a State Plan that delineates the standards for determining eligibility and the extent of Medical Assistance benefits in compliance with the Medical Assistance statute and implementing regulations. Pennsylvania has chosen to participate in the Medical Assistance program and has

adopted a State Plan.

50. Title XIX mandates that a State Plan must provide certain specified health care services. See 42 U.S.C. § 1396a(a)(10)(A)(i) (incorporating 42 U.S.C. § 1396d(a)(1)-(5), (17), (21)).  These mandatory services include, inter alia, in-patient hospital services, out-patient services, nursing facility services, and physician services.

51. In addition to these mandatory services, Title XIX also permits (but does not require) a State Plan to provide other specified Medical Assistance "optional" services identified in 42 U.S.C. § 1396d(a).  42 U.S.C. § 1396a(a)(10)(A). However, if a state chooses to provide such optional services, it must provide those services to all eligible persons throughout the state who need them.

52. ICF/MR services are "optional" under Title XIX.  42 U.S.C. §§ 1396a(a)(10), 1396d(a)(15).  Pennsylvania has chosen to provide ICF/MR services in its State Plan.  As such, individuals who are eligible for ICF/MR services are entitled to receive them.

53. As a result of including ICF/MR services in its state plan, Pennsylvania benefits from a huge influx of federal monies, including reimbursement for more then fifty percent of the costs of Pennsylvania's ICF/MR services.

54. The primary purpose of ICF/MR services is to provide health and habilitation for individuals with mental retardation or other developmental disabilities.  42 U.S.C. § 1396d(d).

55. An essential component of the ICF/MR service is "active treatment". Federal regulations governing ICF/MR services require that residents of an ICF/MR:

> receive a continuous active treatment program, that includes aggressive, consistent implementation of a program of specialized and generic training, treatment, health services and related services ... that is directed toward-- (i) the acquisition of the behaviors necessary for the client to function with as much self determination and independence as possible; and (ii) the prevention or deceleration of regression or loss of current optimal functional status. 42 C.F.R. § 483.440(a)(1).

56. As part of the active treatment services required to be provided, the ICF/MR must develop an individual program plan for each resident. The individual program plan must identify the interventions to support the resident toward independence and must include, for those clients that need them, inter alia, training in the basic personal skills needed for independence and privacy, such as personal and dental hygiene, self-feeding, dressing, grooming, and communication skills. 42 C.F.R. § 483.440(c)(6).

57. Before admitting an individual to an ICF/MR, the ICF/MR must conduct an evaluation to determine "if the facility can provide for the client's needs and if the client is likely to benefit from placement in the facility." 42 C.F.R. § 483.440(b)(3).

58. In Pennsylvania, ICF/MR services are provided through a number of different

means. Some ICF/MRs are large, segregated, state-operated or privately-operated facilities. Some are small, community-based, home-like settings operated by private providers.

59. A person eligible for Medical Assistance must meet three criteria to be eligible for ICF/MR services in Pennsylvania. First, the person must have a diagnosis of mental retardation. Second, the person must need active treatment. Third, the person's physician must recommend that the person needs the level of care provided in an ICF/MR. 55 Pa. Code § 1181.53(b)(4).

60. The need for active treatment is met if "the person will benefit from a professionally developed and supervised program of activities, experiences, or therapies which are necessary for assisting the individual to function at his/her greatest physical, intellectual, social or vocational level." DPW Office of Mental Retardation Bulletin # 99-86-11 (December 31, 1986).

61. DPW has significant control over the development and provision of ICF/MR services.

62. DPW is and has been aware of a substantial waiting list for community residential services for persons with mental retardation who are entitled to ICF/MR services.

63. In 1996, DPW adopted a policy that remains in effect stating that it "does not currently support the development of new ICF/MR proposals." 55 Pa. Code § 6000.821(b).

64. Plaintiffs are Medical Assistance recipients who meet the eligibility criteria for

ICF/MR services. Plaintiffs' needs can be met in small, community-based ICF/MRs, and they would benefit from placement in such programs. Nevertheless, Defendant has failed to provide Plaintiffs with services in small ICF/MR programs. As a result, Plaintiffs have remained on waiting lists for those services for years.

65. Many Medical Assistance recipients in Pennsylvania are receiving ICF/MR services, including small community-based ICF/MR services.

### D. Irreparable Harm

66. Plaintiffs will suffer imminent, irreparable injury absent an award of injunctive relief. Plaintiffs need community-based residential services. Plaintiffs can no longer live in their homes with caregivers who are unable to meet their needs, and they cannot live independently.

## VI. Claims

### A. Count I -- Failure to Provide ICF/MR Services

67. Title XIX requires that states that participate in the Medical Assistance program must make Medical Assistance benefits available. 42 U.S.C. § 1396a(a)(10)(A). Medical Assistance benefits include, at the option of the state, ICF/MR services. 42 U.S.C. § 1396d(a)(15).

68. Pennsylvania has chosen to cover ICF/MR services for eligible persons as a Medical Assistance benefit.

69. Plaintiffs are eligible for Medical Assistance benefits and meet the eligibility

criteria for ICF/MR services.

70. Defendant has failed to provide Plaintiffs with appropriate ICF/MR services in violation of Title XIX.

**B.   Count II -- Failure To Take Applications for and Provide ICF/MR Services With Reasonable Promptness**

71. Title XIX requires that the state plan provide that "all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Defendant must allow Plaintiffs to apply for ICF/MR services in small community settings and also must furnish these Medical Assistance services promptly without any delay caused by the agency's administrative procedures. 42 C.F.R. § 435.930(a).

72. Plaintiffs have requested and are entitled to community residential services, including ICF/MR services.

73. On information and belief, some members of the Plaintiff class were denied the opportunity to apply for ICF/MR services.

74. Plaintiffs have been on waiting lists for community-based ICF/MR services.

75. Defendant has violated Title XIX's reasonable promptness requirement by denying or delaying some Plaintiffs' opportunity to apply for ICF/MR services and by placing Plaintiffs on waiting lists for ICF/MR services.

**VII.** **Request for Relief**

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Retain jurisdiction over this case;

2. Declare that Defendant's actions and inactions violate Title XIX of the Social Security Act;

3. Issue a preliminary injunction and a permanent injunction to enjoin Defendant from continuing to violate Title XIX of the Social Security Act and to require Defendant to immediately provide Plaintiffs and class members with services in community-based mental retardation programs appropriate to their needs; and,

4. Issue such other relief as may be just, equitable and appropriate, including an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

_____
Ilene W. Shane
Attorney I.D. No. 21774
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA 19107-4798
(215) 238-8070

_____
Stephen A. Whinston
Attorney I.D. No. 17975
David Langer
Attorney I.D. No. 84394

                                        Berger & Montague, P.C.
                                        1622 Locust Street
                                        Philadelphia, PA 19103
                                        (215)875-3097

                                        Stephen F. Gold
                                        Attorney I.D. No. 09880
                                        125 S. 9th Street, 7th Floor
                                        Philadelphia, PA 19106
                                        (215)627-7100

                                        Attorneys for Plaintiffs

Date: _____