IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
                                  :
HASSAN SABREE, by his mother and  :
next friend, Hana Sabree;         :
CATHERINE MEADE, by her father    :
                                  :
and next friend, Robert A. Meade; :
JOSEPH FRAZIER, by his mother and :
next friend, Patricia Frazier,    :
for themselves and all others     :
similarly situated,               :
                                  :
              Plaintiffs,         :
                                  :
     v.                           :   Civil Action No. 02-CV-3426
                                  :
FEATHER O. HOUSTOUN, in her       :   Class Action
official capacity as Secretary of :
the Department of Public Welfare  :
of the Commonwealth of            :
Pennsylvania,                     :
                                  :
              Defendant.          :
_____:
```

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Plaintiffs, through their counsel, submit this Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint. Defendant's Motion reflects a misunderstanding of both Plaintiffs' claims and the applicable law and should be denied.

### FACTUAL BACKGROUND

Pennsylvania participates in the joint federal-state Medical Assistance program and has adopted a State Plan. Compl. ¶ 49. A state that participates in the Medical Assistance program receives federal reimbursement for a portion of its expenditures for medical services provided to eligible persons pursuant to the State Plan. Id. ¶ 48. Pennsylvania's State Plan includes services in intermediate care facilities for persons with mental retardation

("ICF/MR services").  Id. ¶ 52.  ICF/MR services provide health and rehabilitative services for persons with mental retardation or other developmental disabilities.  Id. ¶ 54 (citing 42 U.S.C. § 1396d(d)).[1]  In Pennsylvania, ICF/MR services are provided in various settings, ranging from large, segregated institutions to small, community, home-like settings.  Id. ¶ 58.  An ICF/MR can only admit a client if the particular "facility can provide for the client's needs and if the client is likely to benefit from placement in the facility."  Compl. ¶ 57 (citing 42 C.F.R. § 483.440(b)(3)).

Each county in Pennsylvania has a waiting list of persons with mental retardation who need residential and non-residential services.  Compl. ¶ 46.  The Department of Public Welfare ("DPW") has significant control over the development and provision of ICF/MR services.  Compl. ¶ 61.  Though DPW has been aware of a substantial waiting list for community residential services for persons with mental retardation who are eligible for ICF/MR services, it adopted a policy in 1996, which remains in force, which states that it "does not currently support the development of new ICF/MR proposals."  Id. ¶¶ 62-63 (citing 55 Pa. Code § 6000.821(b)).

---

[1]    An individual is eligible for ICF/MR services if s/he meets three criteria:  (1) s/he has mental retardation; (2) s/he needs "active treatment" (i.e., will benefit from a program of activities that assist the individual to function at his/her greatest physical, intellectual, social, or vocational level); and (3) his/her physician recommends an ICF/MR level of care.  Compl. ¶¶ 59-60.

Plaintiffs Hassan Sabree, Catherine Meade, and Joseph Frazier are Pennsylvania Medical Assistance recipients who have mental retardation and need community residential and habilitative mental retardation services.  Compl. ¶¶ 6-8, 13-14, 21, 22-23, 32, 33-34, 40, 69.  Plaintiffs need and are eligible for ICF/MR services.  <u>See</u> Compl. ¶¶ 21, 32, 40, 64, 69.  Their family members applied for residential services, but the Plaintiffs were placed on waiting lists.  <u>Id.</u> ¶¶ 18, 21, 31, 39.

Plaintiffs filed this lawsuit on behalf of themselves and others similarly situated, asserting that Defendant Houstoun, the Secretary of DPW, is violating Title XIX by (1) failing to provide ICF/MR services to which they are entitled, and (2) failing to provide ICF/MR services with reasonable promptness.  Compl. ¶¶ 67-75.  Plaintiffs seek declaratory and injunctive relief.  <u>Id.</u> at 16.

<b>ARGUMENT</b>

## I.   <u>STANDARD OF REVIEW</u>

In a Rule 12(b)(6) motion to dismiss, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant."  <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  A case can be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 122 S. Ct. 992, 998 (2002).

3

## II.  PLAINTIFFS HAVE A RIGHT TO ICF/MR SERVICES THAT CAN BE ENFORCED THROUGH SECTION 1983.

In Count I of the Complaint, Plaintiffs allege that Defendant has denied them ICF/MR services.  Compl. ¶¶ 67-70.  While Plaintiffs seek as a remedy "community-based" ICF/MR services, see Compl. at 16, that request stems from their allegation that community-based ICF/MR services are medically appropriate to meet their needs.  See Compl. ¶¶ 21, 32, 40.

In her Motion to Dismiss, Defendant challenges Count I of the Complaint on the basis that the right to "'small community-based ICFs/MR'" is not enforceable by Medical Assistance recipients pursuant to 42 U.S.C. § 1983 ("Section 1983") because Congress did not intend "to create an 'unambiguously conferred right' to 'small, community-based' ICFs/MR."  Def.'s Mem. at 8 (citation omitted). Defendant conflates two distinct questions.  The first inquiry is whether Congress intended to confer a federal right to Medical Assistance services (including ICF/MR services) that is enforceable through Section 1983.  If the right to Medical Assistance services is enforceable (as Defendant apparently concedes), the Court must determine the scope of the right and whether Defendant's actions violate the right.

Congress conferred a right to ICF/MR services on Medical Assistance recipients which, applying the standard recently enunciated by the Supreme Court, can be enforced by such recipients through Section 1983.  See discussion, infra, at 12-19.  Whether Plaintiffs should receive such services in community-based, rather than institutional, ICFs/MR relates to the merits of the claim --

4

not the enforceability of the right to ICF/MR services.    See discussion, infra, at 19-21.

### A.    The Entitlement to Medical Assistance Services.

Title XIX of the Social Security Act ("Title XIX"), 42 U.S.C. § 1396 et seq., establishes the federal Medical Assistance program. Medical Assistance "is a cooperative federal-state program under which the federal government furnishes funding to states for the purpose of providing medical assistance to eligible low-income persons." Pennsylvania Pharmacists Ass'n v. Houstoun, 283 F.3d 531, 533 (3d Cir. 2002), petition for cert. filed, 70 U.S.L.W. 3776 (U.S. June 7, 2002) (No. 01-1789).  The purpose of the Medical Assistance program "is to help provide medical treatment for low income people," Elizabeth Blackwell Health Center for Women v. Knoll, 61 F.3d 170, 172 (3d Cir. 1995), cert. denied, 516 U.S. 1093 (1996), including services to help such individuals "attain or retain capability for independence or self-care ...."  42 U.S.C. § 1396; accord Meyers ex rel. Walden v. Reagan, 776 F.2d 241, 243 (8th Cir. 1985).

States are not required to participate in the Medical Assistance program, but, if they choose to do so, they must adopt a "state plan" that delineates the standards for determining eligibility and identifies the extent of Medical Assistance benefits.  The state plan that a state adopts must comply with the Medical Assistance statute and implementing regulations.  See 42 U.S.C. § 1396a; Schweiker v. Gray Panthers, 453 U.S. 34, 36-37 (1981); Harris v. McRae, 448 U.S. 297, 301 (1980); Pennsylvania

Pharmacists Ass'n, 283 F.3d at 533; Elizabeth Blackwell Health
Center for Women, 61 F.3d at 172.  Pennsylvania has adopted a State
Plan.  4 Medicare & Medicaid Guide (CCH) ¶ 15,632 (2002); Compl. ¶
49.

Under Title XIX, certain categories of medical care must be
included in every state's Medical Assistance program.  Elizabeth
Blackwell Health Center for Women, 61 F.3d at 173.  Other
categories of "Medical Assistance" (as defined in 42 U.S.C. §
1396d) are "optional," and each state has the discretion to choose
particular optional services in its program.  Id.  However, "when
a state elects to provide an optional service, that service becomes
part of the state Medicaid plan and is subject to the requirements
of federal law."  Tallahassee Memorial Regional Medical Center v.
Cook, 109 F.3d 693, 698 (11th Cir. 1997) (per curiam); see also
Weaver v. Reagan, 886 F.2d 194, 197 (8th Cir. 1989) ("Once a state
chooses to offer such optional services it is bound to act in
compliance with the Act and the applicable regulations in the
implementation of those services ...."). In sum, as the Supreme
Court recognized more than two decades ago:  "An individual is
entitled to Medicaid if he fulfills the criteria established by the
state in which he lives."  Schweiker v. Gray Panthers, 453 U.S. at
36-37 (emphasis added).[2]

---

[2]    E.g., Pereira ex rel. Pereira v. Kozlowski, 996 F.2d 723,
724-25, 727 (4th Cir. 1996) (holding that state must provide
transplant that fell within scope of Medical Assistance benefit);
Meyers ex rel Walden, 776 F.2d at 243-44 (holding that eligible
individuals were entitled under Title XIX to electronic speech
devices since such devices fell within the parameters of "physical
therapy and related services" which was part of the state's plan);

### B.    ICF/MR Services Under Title XIX.

ICF/MR services are an "optional" service under Title XIX. See 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(15); Portland Residence, Inc. v. Steffen, 34 F.3d 669, 670 (8th Cir. 1994); Cramer v. Chiles, 33 F. Supp.2d 1342, 1347 (S.D. Fla. 1999). Pennsylvania has chosen to include ICF/MR services in its Medical Assistance program.  4 Medicare & Medicaid Guide (CCH) ¶ 15,632 at 6589-6 (2002); 55 Pa. Code §§ 1101.31(b)(5), 1101.31(c); Compl. ¶ 52.

Title XIX defines ICF/MR to mean a facility for persons with mental retardation or other related conditions which, inter alia, "meet[] such standards as may be prescribed by the Secretary [of the United States Department of Health and Human Services]." 42 U.S.C. § 1396d(d)(1); accord 42 C.F.R. § 440.150(a)(3).  The Secretary has prescribed standards that prohibit the admission of individuals to an ICF/MR unless "the facility can provide for the client's needs" and "the client is likely to benefit from placement in the facility." 42 C.F.R. § 483.440(b)(3). Further, the ICF/MR standards require that the individual program plans must "support the resident toward independence ...." 42 C.F.R. § 483.440(c)(6); see also 42 C.F.R. § 435.1009 (defining ICF/MR as a residential setting that provides "integration of health and rehabilitation

---

Fred C. v. Texas Health and Human Services Comm'n, 988 F. Supp. 1032, 1035, 1037 (W.D. Tex. 1997) (concluding that states are required to provide augmentative communication devices if such devices are included within an optional service covered by the state's Medical Assistance program), aff'd mem., 167 F.3d 537 (5th Cir. 1998).

services to help <u>each</u> <u>individual</u> function at his greatest ability")
(emphasis added).

These federal statutory and regulatory provisions recognize
that the ICF/MR services provided to any particular individual must
be appropriate to her needs and must maximize her ability to
function independently.  This is consistent with the purpose of
Title XIX, which is to provide services to help eligible persons
"attain or retain capability for independence or self-care."  42
U.S.C. § 1396.  In essence, the regulations seek to assure that the
ICF/MR services provided are medically necessary -- a requirement
for any services provided under Pennsylvania's Medical Assistance
program.  55 Pa. Code § 1101.66(a).

> **C.  Congress Unambiguously Conferred A Right
> to Medical Assistance Services that Is
> <u>Enforceable through Section 1983.</u>**
>
> **1.  The Standard for Assessing
> Whether A Statute Creates A
> Right Enforceable Through
> <u>Section 1983.</u>**

There is no dispute that Title XIX, the Medical Assistance
statute, does not confer an express right of action on Medical
Assistance recipients to enforce violations of the law.  However,
Section 1983 provides a private right of action against any person
who, acting under color of state law, abridges "rights, privileges,
or immunities" secured by the Constitution or federal statutes.
<u>Pennsylvania Pharmacists Ass'n</u>, 283 F.3d at 534-35.

To use Section 1983 to enforce a federal law, the plaintiff
"'must assert the violation of a federal right,' and not merely the
violation of federal law."  <u>Pennsylvania Pharmacists Ass'n</u>, 283

8

F.3d at 535 (citation omitted).   "[A] plaintiff alleging a violation of a federal statute may not proceed under § 1983 unless 1) the statute creates 'enforceable rights, privileges, or immunities within the meaning of § 1983' and 2) Congress has not 'foreclosed such enforcement of the statute in the enactment itself.'"  Id. (quoting Wright v. Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 423 (1987)).

Until recently, the Supreme Court used a three-pronged test to determine whether the first criterion for Section 1983 enforcement (i.e., whether the statute creates enforceable rights) is satisfied.  See Blessing v. Freestone, 520 U.S. 329, 340-41 (1997). First, the provision in question must have been intended to benefit the plaintiff.  Second, the right protected by the statute must not be so "vague and amorphous" that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation, i.e., it must be framed in mandatory rather than precatory terms.  Id.; accord Pennsylvania Pharmacists Ass'n, 283 F.3d at 535.

The Supreme Court's recent decision in Gonzaga University v. Doe, ___ U.S. ___, 122 S. Ct. 2268 (2002), refined the standard set forth in Blessing and prior cases for assessing whether a statute creates a federal right enforceable through Section 1983.  In that case, the Court was required to determine whether an individual could use Section 1983 to enforce the Family Educational Rights and Privacy Act ("FERPA"), which directed the federal Secretary of Education to withhold federal funds from educational institutions

9

that fail to comply with certain provisions. Id. at 2272-73. The
plaintiff in that case brought an action for damages under the
following FERPA provision:

> No funds shall be made available under any
> applicable program to any educational agency
> or institution which has a policy or practice
> of permitting the release of education records
> (or personally identifiable information
> contained therein ...) of students without the
> written consent of their parents to any
> individual, agency, or organization.

20 U.S.C. § 1232g(b)(1) (quoted in Gonzaga University, 122 S. Ct.
at 2273). Further, FERPA required the Secretary of Education to
establish an office and review board to investigate and adjudicate
violations of that provision and allowed termination of federal
funds if compliance could not be voluntarily secured. 122 S. Ct.
at 2273.

The Court in Gonzaga University was concerned that "[s]ome
language in our opinions might be read to suggest that something
less than an unambiguously conferred right is enforceable by §
1983." 122 S. Ct. at 2275. "This confusion has led some courts to
interpret Blessing as allowing plaintiffs to enforce a statute
under § 1983 so long as the plaintiff falls within a general zone
of interest that the statute was intended to protect[.]" Id. The
Court clarified that "it is rights, not the broader or vaguer
'benefits' or 'interests,' that may be enforced under the authority
of that section." Id. (emphasis in original). Gonzaga University
requires that the "text and structure" must unambiguously
demonstrate that Congress intended the statute to be enforceable
through Section 1983. Id. at 2277, 2279.

10

In concluding that FERPA did not create enforceable rights, the Gonzaga University Court looked at several factors.  First, it considered whether the statute included "'rights-creating' language."  122 S. Ct. at 2277, 2279.  The Court noted that Titles VI and IX of the Civil Rights Act (which previously had been held to be privately enforceable) use "individually focused terminology" (i.e., "no person shall be subjected to discrimination") that indicates an intent to create an enforceable right by individuals.  Id. at 2277.  In contrast, FERPA's language -- which forbade the Secretary of Education from providing federal funds to an "educational agency or institution" that engaged in a prohibited "policy or practice" -- was "two steps removed from the interests of individual students and parents and clearly does not confer the sort of 'individual entitlement' that is enforceable under § 1983." Id. (citation omitted).

Second, the Court noted that FERPA addressed merely "institutional policy and practice, not individual instances of disclosure."  Gonzaga University, 122 S. Ct. at 2278 (emphasis added).  Thus, the statute had an "'aggregate' focus" and was "not concerned with 'whether the needs of any particular person have been satisfied ....'"  Id.

Finally, the Court noted that Congress provided a unique enforcement mechanism -- a review board -- that allowed students and parents to file individual complaints.  Gonzaga University, 122 S. Ct. at 2278.  Further, Congress amended FERPA to prohibit the regional offices of the Department of Education from implementing

11

the Secretary's functions under the statute.  Id. at 2279.  This centralized review provision was enacted to prevent multiple interpretations of FERPA, making it "implausible" to conclude that Congress intended "private suits to be brought before thousands of federal- and state-court judges, which could only result in the sort of 'multiple interpretations' the Act explicitly sought to avoid."  Id.[3]

> ## 2.  Applying the <u>Gonzaga University</u> Test, Plaintiffs Have A Federal Right to ICF/MR Services Enforceable through Section 1983.

In Count I, Plaintiffs contend that they have an enforceable right to ICF/MR services under Title XIX.  In pertinent part, Title XIX states:  "A State plan for medical assistance must -- ... provide -- for making medical assistance available to -- ... <u>all individuals</u>" who meet certain eligibility criteria.  42 U.S.C. § 1396a(a)(10)(A) (emphasis added).  "Medical assistance" is in turn defined to include "services in an [ICF/MR] ... for <u>individuals</u> who

---

[3]    The Court confirmed its prior rulings that the existence of a federal right establishes a rebuttable presumption that the right is enforceable through a Section 1983.  <u>Gonzaga University</u>, 122 S. Ct. at 2276.  The Court noted that the plaintiffs "do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes."  Id.  Once the plaintiffs have demonstrated that the statute creates a federal right, the burden shifts to the defendant "to demonstrate that Congress shut the door to private enforcement ...."  Id. at 2276 n.4.  The Court, though, did not have to address whether Congress intended to foreclose private enforcement of FERPA through Section 1983 since it concluded that the statute created no enforceable federal rights.  Id.; <u>see also</u> <u>Missouri Child Care Ass'n v. Cross</u>, No. 01-3346, 2002 WL 1396512 at *4 n.8 (8th Cir. June 28, 2002) (discussing <u>Gonzaga University</u> and congressional intent to foreclose Section 1983 actions) (Attachment A).  Defendant here does not argue that Congress intended to foreclose a Section 1983 action.

are determined in accordance with [42 U.S.C. § 1396a(a)(31)] to be in need of such care[.]"  42 U.S.C. § 1396d(a)(15) (emphasis added).[4]  If a state chooses to include ICF/MR services in its state plan, it must provide a written plan of care for "each patient." 42 U.S.C. § 1396a(a)(31).  Comparing these requirements with the FERPA provision at issue in <u>Gonzaga University</u>, it is evident that it creates an unambiguous individual right to Medical Assistance services that is enforceable through Section 1983.

### a.    <u>Rights-Creating Language</u>

The Title XIX provisions at issue in Count I reflect "rights-creating" language.  The statutory language described above requires states to make Medical Assistance -- which, in Pennsylvania, includes ICF/MR services -- available to "<u>all individuals</u>" who are eligible for such services.  42 U.S.C. § 1396a(a)(10)(A) (emphasis added).  Title XIX's specific ICF/MR provisions also are directed to the <u>individual</u>.  42 U.S.C. §§ 1396a(a)(31), 1396d(a)(15).

The Title XIX provisions' direct focus on the benefits to be conferred on the individuals stands in sharp contrast to the FERPA provision at issue in <u>Gonzaga University</u>, which addressed when federal funds would be made available to educational institutions that engaged in prohibited policies and practices and made no direct reference to individuals or persons.  The Title XIX

---

[4]    As noted above, ICF/MR services are an optional, not a mandatory, Medical Assistance service. However, it is well-settled that once a state includes an optional service in its state plan (as Pennsylvania has included ICF/MR services), it must provide such services. <u>See</u> discussion, <u>supra</u>, at 6-7.

provisions at issue in Count I reflect precisely "the sort of 'individual entitlement' that is enforceable under § 1983." Gonzaga University, 122 S. Ct. at 2277 (emphasis in original).

Although the Title XIX statutory provisions involved in Count I are written in terms of the state plan's requirements, this does not make the focus of the provisions a "step removed" from the beneficiaries. Congress amended the Social Security Act (including the Medical Assistance statute in Title XIX of that Act) to make clear that such phrasing was not intended to render such provisions unenforceable by private litigants. Congress provided:

> In an action brought to enforce a provision of the Social Security Act, such provision is not to be deemed unenforceable because of its inclusion in a section of the Act requiring a State plan or specifying the required contents of a State plan.

42 U.S.C. § 1320a-2; accord 42 U.S.C. § 1320a-10.

This amendment was enacted in response to the Supreme Court's decision in Suter v. Artist M., 503 U.S. 347 (1992). Suter held a provision of the Adoption Assistance and Child Welfare Act ("AACWA"), part of the Social Security Act, to be unenforceable under Section 1983. In doing so, the Court indicated that one reason the provision was unenforceable was because the AACWA only required states to adopt a plan, approved by the Secretary of the Department of Health and Human Services, which includes the statutory features. Id. at 358.[5] Congress rejected the Suter

---

[5]    The Suter Court identified other reasons as well to support its decision that the provision in question was unenforceable. In amending the Social Security Act in light of Suter, Congress declined to overrule the actual holding in Suter

Court's rationale that the mere inclusion of a provision as part of a state plan requirement somehow rendered the provision unenforceable under Section 1983.

Both 42 U.S.C. § 1320a-2 and § 1320a-10 preclude this Court from concluding that Title XIX's ICF/MR provisions (42 U.S.C. §§ 1396a(a)(10) and 1396d(a)(15)) are merely descriptions of the state plan's requirements rather than entitlements conferred on individual Medical Assistance recipients. As such, there are no steps between the focus of the statutory provisions and the individuals. The Title XIX ICF/MR provisions have an "'unmistakable focus,'" Gonzaga University, 122 S. Ct. at 2275 (emphasis in original; citation omitted), purely and directly on the individual beneficiaries.[6]

Indeed, the provisions at issue in this case stem from the same statutory scheme as the Boren Amendment to Title XIX, which the Supreme Court held to create a federal right enforceable by hospitals through Section 1983. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 509-20 (1990). The Boren Amendment required in relevant part:

---

that the particular provision was unenforceable. 42 U.S.C. §§ 1320a-2, 1320a-10.

[6] Gonzaga University reiterates that the underlying purpose of the inquiry is a determination of congressional intent to create an enforceable right. See Gonzaga University, 122 S. Ct. at 2275. Given the primacy of congressional intent, the enactment of 42 U.S.C. §§ 1320a-2 and 1320a-10 crucially reflect Congress's understanding that some provisions of the Social Security Act are enforceable through private lawsuits and that the mere placement of a provision within the context of state plan requirements is irrelevant.

> [A] State plan for medical assistance must --
> provide ... for payment ... of hospital
> services ... provided under the plan through
> the use of rates ... which the State finds and
> makes satisfactory assurances to the Secretary
> are reasonable and adequate to meet the costs
> which must be incurred by efficiently and
> economically operated facilities ....

Id. at 502-03 (quoting 42 U.S.C. § 1396a(a)(13)(A)). Just as the Boren Amendment to Title XIX was held to create a federal right to reasonable and adequate rates that hospitals could enforce through Section 1983, the Title XIX provisions that require states to make available Medical Assistance (including ICF/MR services) confers a federal right that eligible beneficiaries can enforce through Section 1983.[7]

The Third Circuit's recent decision in Pennsylvania Pharmacists Ass'n is analogous as well. In that case, the court was faced with the question of whether pharmacists could use Section 1983 to enforce a provision of Title XIX that required the state plan for medical assistance to

> "[P]rovide such methods and procedures
> relating to the ... payment for care and
> services available under the plan ... as may
> be necessary ... to assure that payments are
> consistent with efficiency, economy, and

---

[7]    In Gonzaga University, the Court indicates that the Boren Amendment at issue in Wilder involved a "monetary" entitlement to health care providers. 122 S. Ct. at 2274, 2278 n.6. While the Title XIX provisions here do not create any "monetary" entitlement, they certainly create a tangible property interest to a specific medical service that is more equivalent to the monetary entitlement of Wilder than to the amorphous privacy interests of FERPA. The right of eligible persons to receive Medical Assistance services (whether ICF/MR services, physician services, nursing home services or any other covered services) is as concrete (indeed, perhaps more so) than the right to "reasonable and adequate" payments conferred on health care providers in the Boren Amendment.

16

> quality of care and are sufficient to enlist
> enough providers so that care and services are
> available under the plan at least to the
> extent that such care and services are
> available in the general population in the
> geographic area."

Pennsylvania Pharmacists Ass'n, 283 F.3d at 537 (quoting 42 U.S.C.
§ 1396a(a)(30)(A)).   Although decided shortly before Gonzaga
University, the Third Circuit used the private right of action test
embraced in Gonzaga University.   Id. at 536-37.   While the court
held that pharmacists could not enforce the Title XIX provision
because it was not drafted with an "'unmistakable focus'" on
providers, id. at 536-42 (citation omitted), it emphasized that the
same provision certainly could be enforced by Medical Assistance
recipients.  Id. at 543-44; see also Dajour B. v. City of New York,
No. 00-CIV-2044(JGK), 2001 WL 830674 at *8-*10 (S.D.N.Y. July 23,
2001) (applying pre-Gonzaga University test, court held that
Medical Assistance recipients could enforce entitlement to specific
type of Medical Assistance services through Section 1983)
(Attachment B); Parry ex rel. Parry v. Crawford, 990 F. Supp. 1250,
1254-5 (D. Nev. 1998) (applying pre-Gonzaga University test, court
held that plaintiff could enforce entitlement to ICF/MR service
through Section 1983).

### b.    Aggregate vs. Individual Focus

The Court in Gonzaga University noted that, not only was FERPA
"two steps removed" from reference to any individuals, 122 S. Ct.
at 2277, but its non-disclosure provisions "speak only to
institutional policy and practice, not individual instances of

17

disclosure." Id. at 2278.  Thus, the Court found that FERPA had an
"'aggregate' focus" that was "not concerned with 'whether the needs
of any particular person have been satisfied ....'" Id. (citations
omitted).

In contrast, the Title XIX provisions that create an
entitlement to Medical Assistance benefits for eligible persons
that are at issue in Count I do not have an "aggregate focus."  The
provisions do not require that states provide "most" eligible
beneficiaries with Medical Assistance services, nor do they require
merely that states have "policies and practices" that comply with
Title XIX.  Rather, the provision at issue address the rights of
"all individuals" who meet the eligibility criteria.  42 U.S.C. §
1396a(10)(A)(i).  So, too, the ICF/MR provisions focus on
"individuals" -- not on the majority of eligibility persons or on
policies and practices.  42 U.S.C. §§ 1396a(a)(31), 1396d(a)(15).

### c.  Centralized Review

The Title XIX provisions at issue here also differ from the
FERPA provision found to be unenforceable in Gonzaga University
because there is no analogous centralized federal review mechanism
available to Medical Assistance beneficiaries.  While FERPA
required the Secretary of Education to establish a single federal
review agency to adjudicate complaints under FERPA made by students
or parents, Gonzaga University, 122 S. Ct. at 2273, 2278-79, Title
XIX does not create any mechanism by which Medical Assistance
recipients may file with the federal government any individualized
complaints that their benefits have been unlawfully denied.

3.    **Whether Plaintiffs Should Receive Services In Community-based ICFs/MR, Rather than Institutional ICFs/MR, Does Not Effect the Enforceability of the Entitlement to ICF/MR Services.**

Given the analysis above, there can be little dispute that Title XIX confers on eligible Medical Assistance recipients, such as Plaintiffs, a federal right to receive ICF/MR services that can be enforced through Section 1983.  Defendant, though, contends that there is no federal right to "small, community-based" ICF/MR services that can be enforced through Title XIX.  Def.'s Mem. at 7-8.  Defendant's argument confuses the merits of Plaintiffs' claim with the question of they can file a lawsuit to pursue the claim at all.

As Medical Assistance recipients, Plaintiffs have a right to receive Medical Assistance services (including ICF/MR services) under Title XIX of the Social Security Act.  As discussed in the prior section, Plaintiffs certainly may enforce this right through Section 1983.  Once Plaintiffs have established that they may enforce their right to ICF/MR services through a private lawsuit under Section 1983, the lawsuit may proceed.  Whether Plaintiffs will prevail on the merits is a separate question, but not one that undermines the enforceability of the federal right to Medical Assistance services.

The milieu in which Plaintiffs should receive ICF/MR services (i.e., community or institutional), in essence, is in inquiry into what services are medically appropriate.  Defendant must assure that any Medical Assistance services they provide to Plaintiffs are

20

medically appropriate.  See Roe v. Casey, 464 F. Supp. 487, 501
(E.D. Pa. 1978) (indicating that Title XIX requires states "to
provide at least the minimum necessary medical services required
for successful treatment of the particular medical condition
presented."), aff'd on other grounds, 623 F.2d 829 (3d Cir. 1980);
Keenhold ex rel. Thrower-Keenhold v. Commonwealth, Dep't of Public
Welfare, 774 A.2d 377, 379 (Pa. Commw. Ct. 2000) (same).  The issue
of what environment is medically appropriate does not undermine the
existence of the underlying enforceable federal right to ICF/MR
services.[8]

Plaintiffs and others with mental retardation can seek ICF/MR
services only through their county offices of mental retardation.
Compl. ¶ 45.  Plaintiffs will establish that Defendant has never
offered Plaintiffs any ICF/MR services in any type of setting.
Plaintiffs may enforce their right to ICF/MR services in this
private lawsuit through Section 1983.  Ultimately, the question of
what type of ICF/MR services are medically appropriate will be
addressed on the merits.

---

[8]    For example, assume that a Medical Assistance recipient
with heart disease alleges that defendant violates Title XIX
because he needs a cardiologist and there are no such specialists
enrolled in the state's Medical Assistance program.  The defendant
contends that a general practitioner can provide him with the
services he needs.  Under Title XIX, "physicians' services" are a
service for eligible beneficiaries.  42 U.S.C. §§ 1396a(a)(10)(A),
1396d(a)(5)(A).  The Court could not dismiss the lawsuit on the
basis that there is no federal right enforceable under Section 1983
to "cardiologist services," but, rather, only to "physicians'
services."  The dispute as to whether a general practitioner's
services for heart disease is medically appropriate goes to the
merits of the claim, not the enforceability of the right to
"physicians' services."

### III. PLAINTIFFS HAVE A RIGHT TO RECEIVE MEDICAL ASSISTANCE SERVICES WITH REASONABLE PROMPTNESS AND THAT RIGHT CAN BE ENFORCED THROUGH SECTION 1983.

Count II of the Complaint alleges that Defendant violates Title XIX, 42 U.S.C. § 1396a(a)(8), by failing to provide Plaintiffs with ICF/MR services with "reasonable promptness," resulting in their placement on lengthy waiting lists for services. Defendant seeks to dismiss Count II solely on the basis that the "reasonable promptness" mandate of Title XIX is not privately enforceable through Section 1983. Def.'s Mem. at 8-13.[9] Gonzaga University's analysis does not yield any conclusion different from those reached by virtually every federal court that addressed the issue prior to that decision, i.e., that Medical Assistance recipients may enforce the reasonable promptness mandate through Section 1983.

---

[9]    Defendant contends that Plaintiffs' reasonable promptness claim also is "factually defective" because Plaintiffs do not allege that they were denied the opportunity to apply for Medical Assistance and/or ICF/MR services. Def.'s Mem. at 8-9. Count II is based on 42 U.S.C. § 1396a(a)(8), which requires that states (1) provide individuals with opportunity "to make application" for Medical Assistance, and (2) "that such assistance shall be furnished with reasonable promptness." 42 U.S.C. § 1396a(a)(8). These are two separate requirements, and Plaintiffs allege only a violation of the reasonable promptness requirement. Boudreau ex rel. Boudreau v. Ryan, No. 00-C-5392, 2002 WL 314794 (N.D. Ill. Feb. 28, 2002), cited by Defendants, Def.'s Mem. at 9, is inapposite. In Boudreau, the court held that the individual plaintiffs lacked standing to pursue claims that they had a right (under the reasonable promptness and other provisions) to receive ICF/MR services within a particular geographic area in the state. There is no indication in Boudreau that a plaintiff must prove that he was denied an opportunity to apply for ICF/MR services before he can proceed with a reasonable promptness claim.

**A.    Title XIX's Reasonable Promptness
        Mandate.**

Title XIX requires states to furnish Medical Assistance
services with reasonable promptness.   42 U.S.C. § 1396a(a)(8).
Since ICF/MR services constitute "Medical Assistance" benefits to
which eligible individuals are entitled, see discussion, supra, at
6-7, Defendant must furnish such services to eligible individuals
with reasonable promptness.  See Boulet v. Cellucci, 107 F. Supp.2d
61, 76 (D. Mass. 2000); Lewis v. New Mexico Dep't of Health, 94 F.
Supp.2d 1217, 1234 (D.N.M. 2000), aff'd on other grounds, 261 F.3d
970 (10th Cir. 2001).   Maintaining waiting lists for Medical
Assistance services violates Title XIX's reasonable promptness
mandate.  See Doe v. Chiles, 136 F.3d 709, 717 (11th Cir. 1998);
Boulet v. Cellucci, 107 F. Supp.2d at 79-81; Kirk T. v. Houstoun,
Civil Action No. 99-3253, 2000 WL 830731 at *4 (E.D. Pa. June 27,
2000) (Attachment C); Rolland v. Cellucci, 52 F. Supp.2d 231, 239-
40 (D. Mass. 1999); Sobky v. Smoley, 855 F. Supp. 1123, 1147-48
(E.D. Cal. 1994).   Further, the total lack of any time frame for
the availability of ICF/MR services is itself a violation of the
reasonable promptness mandate.  See Kirk T. v. Houstoun, 2000 WL
830731 at *3.

**B.    Applying the Gonzaga University Test to
        Count II, Plaintiffs May Enforce Title
        XIX's Reasonable Promptness Mandate
        Through Section 1983.**

**1.    Rights-Creating Language**

Gonzaga University indicated that the court must look at
whether the provision at issue includes "rights-creating" language.

23

See discussion, supra, at 11, 13.  Title XIX provides that "[a] State plan for medical assistance must -- provide that ... such [medical] assistance shall be furnished with reasonable promptness to all eligible individuals[.]"  42 U.S.C. § 1396a(a)(8) (emphasis added).   This language, like the straightforward entitlement provisions of the statute at issue in Count I, focuses expressly on the individuals and the benefits to which they are entitled. Unlike the FERPA provision at issue in Gonzaga University, the reasonable promptness mandate is directly related to individual Medical Assistance recipients.   The provision directly provides that "all eligible individuals" must be furnished with Medical Assistance services with reasonable promptness.  It unquestionably seeks to confer rights on Medical Assistance recipients.[10]

## 2.   **Aggregate vs. Individual Focus**

The reasonable promptness mandate of Title XIX does not have the type of aggregate focus determined by Gonzaga University to render a statute unenforceable.   Under the reasonable promptness statute, "all eligible individuals" have a right to receive Medical Assistance services with reasonable promptness.   Unlike FERPA (which focused on policies and practices of educational institutions rather than on students and parents), the reasonable promptness mandate of Title XIX focuses exclusively on Medical Assistance recipients.  Nor is this a situation where the statute

---

[10]    Again, the fact that the provision is phrased in terms of the state plan requirements must be ignored given the express congressional direction embodied in 42 U.S.C. §§ 1320a-2 and 1320a-10.  See discussion, supra, at 14-15.

only requires that "most" recipients receive Medical Assistance services with reasonable promptness; it confers that right on "all" eligible recipients.

Defendant, though, insists that the reasonable promptness mandate has an "aggregate" rather than individual focus. Def.'s Mem. at 9. The basis for this assertion is unclear. To the extent that Defendant contends that the statutory provision has an "aggregate focus" because it is phrased in the plural ("all eligible individuals") rather than the singular ("any" or "a" eligible individual), her argument is obviously specious. The Gonzaga University Court only sought to assure that the statutory provision was focused on the particular group of individuals who sought to enforce it (in that case, students and parents) instead of focusing on some subset of that group ("most" or "some") or on a wholly different group (in that case, educational institutions).

Defendant also seems to assert that the reasonable promptness provision has an "aggregate" focus because the standard of "reasonable promptness" is unduly vague and requires individualized assessments. Although Defendant unequivocally states that Gonzaga University "clearly disavowed the three-part test set forth in Blessing," Def.'s Mem. at 6, she seeks to import the "vagueness" prong of the Blessing test into the "aggregate focus" inquiry discussed in Gonzaga University and relies primarily on a pre-Gonzaga University case, Suter v. Artist M., to support her argument. Def.'s Mem. at 10. The "aggregate focus" analysis in Gonzaga University, though, is not equivalent in any sense to the

"vagueness" test set forth in <u>Blessing</u>.  Rather, the point of the "aggregate focus" is to look at <u>who</u> is affected by the statute, not on the substantive requirements of the statute.

Defendant's desire to revert to the pre-<u>Gonzaga University</u> standard to undermine Plaintiffs' reasonable promptness claim is particularly odd since, prior to <u>Gonzaga University</u>, court after court held that the "reasonable promptness" mandate of Title XIX was enforceable by Medical Assistance recipients through Section 1983.  In <u>Doe v. Chiles</u>, the Eleventh Circuit held that Medical Assistance recipients could bring suit under Section 1983 to enforce the reasonable promptness provision and challenge waiting lists for ICF/DD services (the name for ICF/MR services in Florida).  The <u>Doe</u> Court specifically held that Title XIX's reasonable promptness mandate was not so vague and amorphous that its enforcement would "exceed[] our institutional competence." 136 F.3d at 716.

In support of its decision, the <u>Doe</u> Court relied on two Supreme Court decisions:  (1) <u>Wright v. City of Roanoke Redevelopment & Housing Authority</u>, 479 U.S. 418, 431-32 (1987), in which the Court held that a federal law that limited public housing authorities to charging tenants "reasonable" amounts for utilities as part of their rent was not too vague and amorphous to be enforced by tenants under Section 1983, and (2) <u>Wilder</u>, 496 U.S. at 519-20, in which (as discussed above) the Court held that the Boren Amendment of Title XIX, which required states to pay "reasonable and adequate" rates to hospitals and other facilities, was not so

vague and amorphous as to be unenforceable under Section 1983.  The
Doe Court found that the reasonable promptness mandate of Title XIX
was similar to the provisions in Wright and Wilder, explaining:

> [A]s Wright and Wilder indicate, the fact that
> a state retains substantial discretion in
> determining the relevant time periods [under
> Title XIX's reasonable promptness mandate]
> "does not render the [clause] unenforceable by
> a court." Wilder, 496 U.S. at 519, 110 S.Ct.
> at 2523.  "While there may be a range of
> reasonable [time periods for provision of
> assistance], there certainly are some [time
> periods] outside that range that no State
> could ever find to be reasonable ... under the
> [Medicaid] Act." Wilder, 496 U.S. at 519-20,
> 110 S.Ct. at 2523.

Id. at 717 (emphasis and amendments in original).

The Doe Court did not rely solely on the comparison of Title
XIX's reasonable promptness mandate with the statutory language at
issue in Wright and Wilder.  The court noted, too, that: (1) 42
U.S.C. § 435.930(a) requires that a state must furnish Medical
Assistance without "any delay caused by the agency's administrative
procedures"; and (2) 42 U.S.C. § 435.911(a) establishes time limits
for eligibility determinations -- 90 days for disability-based
applications and 45 days for others.  136 F.3d at 714, 717.  Thus,
the Eleventh Circuit concluded that "the regulations further define
the contours of the statutory right to reasonably prompt provision
of assistance" to guide courts in enforcement.  Doe v. Chiles, 136
F.3d at 717.[11]

_____

[11]    Citing South Camden Citizens Action in Action v. New
Jersey Dep't of Environment Protection, 274 F.3d 771, 790 (3d Cir.
2001), Defendant contends that the Court cannot look to these
regulations.    Def.'s Mem. at 10 n.5.    This reflects a
misunderstanding of South Camden, which merely held that Section

The conclusion in <u>Doe v. Chiles</u> that the reasonable promptness mandate creates a federal right enforceable through Section 1983 has been confirmed by many district courts (including judges in this District). <u>E.g.</u>, <u>Bryson v. Shumway</u>, 177 F. Supp.2d 78, 93-94 (D.N.H. 2001); <u>Rancourt v. Concannon</u>, 175 F. Supp.2d 60, 61-62 (D. Me. 2001); <u>Boudreau ex rel. Boudreau v. Ryan</u>, No. 00-C-5392, 2001 WL 840583 at *9 (N.D. Ill. May 2, 2001) (Attachment D); <u>Antrican v. Buell</u>, 158 F. Supp.2d 663, 670-71 (E.D.N.C. 2001), <u>aff'd on other grounds sub nom.</u> <u>Antrican v. Odom</u>, 290 F.3d 178 (4th Cir. 2002); <u>DeLong v. Houstoun</u>, No. 00-CV-4332, 2000 WL 1689077 at *4 (E.D. Pa. Oct. 26, 2000) (Attachment E); <u>Boulet v. Cellucci</u>, 107 F. Supp.2d at 71-73; <u>Lewis v. New Mexico Dep't of Health</u>, 94 F. Supp.2d at 1234-36; <u>Kirk T. ex rel. Deborah T. v. Houstoun</u>, Civil Action No. 99-3253, 1999 WL 820201 at *2-*3 (E.D. Pa. Sept. 28, 1999) (Attachment F); <u>Sobky v. Smoley</u>, 855 F. Supp. at 1146-47; <u>see also</u> <u>Albiston v. Maine Comm'r of Human Services</u>, 7 F.3d 258, 266-67 (1st Cir. 1993) (holding that the reasonable promptness mandate in the AFDC statute -- essentially identical to the language in Title XIX -- could be enforced under Section 1983).

Defendant urges this Court to swim against this tide of authority, contending that timing of the delivery of ICF/MR

---

1983 cannot be used to enforce regulations that are not tethered to any right created by a statute.  274 F.3d at 790.  <u>South Camden</u> does not stand for the proposition that a plaintiff, in enforcing a statutory right, cannot rely on regulations to "define or flesh out the content of a specific right conferred upon the plaintiffs by" the statute.  <u>Id.</u>  The regulations implementing the reasonable promptness statute cited by the court in <u>Doe v. Chiles</u> merely "define or flesh out" 42 U.S.C. § 1396a(a)(8)'s reasonable promptness requirement; they do not create entirely new rights.

services will vary from one person to another. Def.'s Mem. at 12. This argument misapprehends the reasonable promptness mandate.

First, as Judge Buckwalter has concluded, Defendant, at minimum, must establish time lines to measure reasonable promptness for a particular Medical Assistance service. <u>Kirk T. v. Houstoun</u>, 2000 WL 830731 at *3. In this case, Plaintiffs are eligible for ICF/MR services, but they may sit on waiting lists for years. Defendant has established no uniform time frame -- whether six months or six years -- within which ICF/MR services must be provided.

Second, the Court may examine whether the administrative procedures used by Defendant to assure the provision of the particular service results in a system that generally yields undue delays in the provision of the service. <u>See</u> 42 C.F.R. § 435.930(a). The Court can readily review the state's administrative procedures to determine whether they impede the provision of the Medical Assistance service generally without determining whether any particular individual has waited too long for the service. Here, for example, Plaintiffs assert that DPW has significant control over the development and provision of ICF/MR services, but yet has adopted a policy that inhibits the development of ICFs/MR, resulting in lengthy waiting lists for ICF/MR services. <u>See</u> Compl. ¶ 63 (citing 55 Pa. Code § 6000.821(b)). The Court can examine this and other administrative policies and practices implemented by DPW to objectively assess

29

whether those policies and practices have led to a shortage of ICF/MR services to meet Plaintiffs' and class members' needs.

Finally, the Court can determine whether, given the purpose of the Medical Assistance benefit, see Albiston, 7 F.3d at 267, and the general time needed by providers to develop the service, the length of the delay is undue.  The Court can examine testimony of providers concerning the typical time period necessary to develop various types of ICF/MR services under various circumstances.  The Court similarly can look to the overall purpose of ICF/MR services, as the First Circuit suggested in Albiston, 7 F.3d at 267.[12]  Based on these facts, the Court can objectively establish a maximum waiting period for ICF/MR services without making individualized determinations.

### 3.    **Centralized Review**

As discussed above, Title XIX does not include an enforcement mechanism analogous to FERPA so as to conclude that Congress did not intend private enforcement.  See discussion, supra, at 18.

---

[12]    For example, the Court may examine evidence that delays of more than a year for ICF/MR services severely undercut the ability of ICF/MR services to achieve their purpose -- to maximize functioning and independence.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss the Complaint.

Respectfully submitted,

Dated: July 29, 2002          By: _____
                                  Ilene W. Shane
                                  Attorney I.D. No. 21774
                                  Robin Resnick
                                  Attorney I.D. No. 46980
                                  Disabilities Law Project
                                  1315 Walnut Street, Suite 400
                                  Philadelphia, PA  19107-4798
                                  (215) 238-8070

                                  Stephen A. Whinston
                                  Attorney I.D. No. 17975
                                  David Langer
                                  Attorney I.D. No. 84394
                                  Berger & Montague, P.C.
                                  1622 Locust Street
                                  Philadelphia, PA 19103
                                  (215) 875-3097

                                  Stephen F. Gold
                                  Attorney I.D. No. 09880
                                  125 South Ninth Street
                                  Suite 700
                                  Philadelphia, PA  19107
                                  (215) 627-7100

                                  Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
                                  :
HASSAN SABREE, by his mother and  :
next friend, Hana Sabree;         :
CATHERINE MEADE, by her father    :

and next friend, Robert A. Meade; :
JOSEPH FRAZIER, by his mother and :
next friend, Patricia Frazier,    :
for themselves and all others     :
similarly situated,               :
                                  :
             Plaintiffs,          :
                                  :
        v.                        :   Civil Action No. 02-CV-3426
                                  :
FEATHER O. HOUSTOUN, in her       :   Class Action
official capacity as Secretary of :
the Department of Public Welfare  :
of the Commonwealth of            :
Pennsylvania,                     :
                                  :
             Defendant.           :
_____:
```

**<u>ORDER</u>**

Upon consideration of Defendant's Motion to Dismiss the Complaint and Plaintiffs' Memorandum of Law in Opposition to that Motion, it is hereby ORDERED on this _____ day of _____, 2002 that Defendant's Motion is DENIED.

_____
The Honorable Herbert J. Hutton
United States District Judge

## **CERTIFICATE OF SERVICE**

I, Ilene W. Shane, hereby certify that true and correct copies of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss and proposed Order were served on the following by first class mail, postage prepaid on July 29, 2002:

```
John A. Kane, Esquire
Chief Counsel
Department of Public Welfare
Office of General Counsel
Health & Welfare Building
Third Floor West
Harrisburg, PA  17120

Doris M. Leisch, Esquire
Chief of Litigation
Department of Public Welfare
Office of General Counsel
1700 State Office Building
1400 Spring Garden Street
Philadelphia, PA  19130
```

_____
Ilene W. Shane