IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HASSON SABREE**, by His Mother and Next Friend, Hana Sabree, <u>et al.</u>, <br><br> **Plaintiffs** <br><br> v. <br><br> **FEATHER O. HOUSTOUN**, in Her Official Capacity As Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, <br> **Defendant** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : Civil Action No. 02-3426 <br> : Class Action <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

The Defendant, the Honorable Feather O. Houstoun, Secretary of the Pennsylvania Department of Public Welfare ("Department"), submits this reply only to address the arguments presented in Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Plaintiffs' Memorandum"). The Secretary otherwise relies on the arguments presented in the Memorandum of Law in Support of Defendant's Motion to Dismiss ("Defendant's Memorandum") and will not repeat those arguments here.

Although Plaintiffs present a complex and lengthy argument in opposition, the issue presented in the motion to dismiss is quite simple: Does Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, confer an enforceable right to small, community-based intermediate care facilities for mentally retarded persons ("ICFs/MR")? Plaintiffs implicitly acknowledge the complete absence of any statutory (or regulatory) language conferring such a right, but argue that the right they assert is nonetheless enforceable because the size of the ICF/MR relates to "the

merits of the claim." Plaintiffs' Memorandum at 4. Even a cursory review of the Complaint shows that Plaintiffs are seeking to vindicate a right to "small, community-based" ICFs/MR, see, e.g., Complaint at ¶ 2, and so the Complaint itself belies their argument. Because the statutes does not confer the right Plaintiffs seek to assert, the Complaint fails to state a claim for which relief can be granted and should be dismissed.

## ARGUMENT

I. **Plaintiffs Do Not Have an Enforceable Right Under 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(15) to Services in Small, Community-Based ICFs/MR.**

   A. **Title XIX Does Not Confer an Enforceable Individual Right to ICF/MR Services.**

Rather than focusing on the crux of their claim to small, community-based ICFs/MR, the entire first argument in Plaintiffs' Memorandum is directed toward persuading the Court that the ICF/MR provisions of Title XIX confer an enforceable right to ICF/MR services in general. See Plaintiffs' Memorandum at 5-18. In doing so, Plaintiffs hypothesize that Secretary Houstoun has conceded that those provisions confer enforceable rights. Id. at 4. To the contrary, Secretary Houstoun did not address the broader issue in her memorandum of law because she believed it was irrelevant to the issue presented in this case. Since Plaintiffs insist the opposite, Secretary Houstoun will respond to the broader issue of whether Title XIX confers an enforceable individual right to ICF/MR services in general.

In Gonzaga University v. Doe, ___ U.S. ___, 122 S. Ct. 2268 (2002), the Supreme Court made clear that the singular focus of an inquiry into whether spending legislation confers an individual right is whether or not the "text and structure of the statute show that Congress intended to confer individual rights upon a class of beneficiaries." Id. at 2276 (citations omitted). See also id. at 2273 (Congress must "speak with a clear voice" and manifest "unambiguous" intent to confer individual rights) (quoting Pennhurst State Sch. & Hosp. v.

Halderman, 451 U.S. 1, 17, 28 & n.21 (1981)). The Court concluded that because the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, "entirely lack[s] the sort of 'rights-creating' language critical to showing the requisite congressional intent" and "speak[s] only in terms of institutional policy and practice, not individual instances of disclosure," which needed only to "comply substantially" to avoid termination of federal funding, the statute did not confer enforceable rights. 122 S. Ct. at 2277-78.[1]

Plaintiffs focus their attempt to persuade this Court that they have an enforceable individualized right to ICF/MR services on the specific statutory sections that apply to those services. See Plaintiffs' Memorandum at 13 (discussing 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(31), and 1396d(a)(15)). According to Plaintiffs, the "direct focus on individuals" in these provisions "stands in sharp contrast" to the FERPA provision at issue in Gonzaga, which addressed when federal funds would be made available to educational institutions. Id. In fact, Title XIX is much more akin to FERPA in its lack of "unmistakable focus" on and its failure to be "phrased in terms of" the persons benefited, 122 S. Ct. at 2275, than Plaintiffs would have this Court believe.

In analyzing Sections 1396a and 1396d, Plaintiffs skip a step by overlooking Section

---

[1] The Plaintiffs' analysis of Gonzaga suggests that the Court replaced the "three-part test" summarized in Blessing v. Freestone, 520 U.S. 329 (1997), with yet another "three-part test" that courts must apply in analyzing the private enforceability of a statute. See Plaintiffs' Memorandum at 11-18. Since Chief Justice Rehnquist disavowed the "three factors" approach in Blessing, see 122 S. Ct. at 2275, a more reasonable reading of Gonzaga is that the Court merely highlighted those aspects of FERPA that confirmed lack of congressional intent to create an individual right rather than set forth a new "test." See also 122 S. Ct. 2268, 2279 (Breyer, J., concurring) (acknowledging that Court eliminated consideration of "factors" in favor of "presumption" that right must be "set forth 'unambiguously' in the statute's 'text and structure'"). Indeed, the Court looked to the central enforcement mechanisms, which Plaintiffs cite as the third "factor," see Plaintiffs' Memorandum at 11-12, only to "buttress[ ]" its "conclusion" that FERPA does not confer enforceable rights. 122 S. Ct. at 2278. This Court should therefore reject the Plaintiffs' invitation to apply a "three-part test" to the enforceability inquiry even after Gonzaga.

1396, the provision from which all other provisions in Title XIX, including those on which Plaintiffs purport to rely, proceed. That section provides:

> <u>For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance</u> on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, <u>there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter.</u>  <u>The sums</u> made available under this section <u>shall be used for making payments to States which have submitted</u>, and had approved by the Secretary, <u>State plans for medical assistance.</u>

42 U.S.C. § 1396 (emphasis added). Thus, far from "being phrased in terms of the persons benefited," Title XIX - like the FERPA provision in <u>Gonzaga</u> - is from the outset phrased in terms of making funds available to States. The absence of congressional intent to create individual rights is underscored by the statutory authorization to States to make benefits available "as far as practicable under the conditions in such State." If Congress had intended to create individual rights, it would hardly have contemplated that such rights would vary from State to State.

The similarity to FERPA does not end with the authorizing provision. Under Section 1396c:

> If the Secretary [of Health and Human Services], after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of the State plan approved under this subchapter, finds—
>
> * * * *

> **(2)** that in the administration of the plan there is a failure to comply substantially with any such provision;
>
> the Secretary shall notify such State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of the State plan not affected by such failure), until the Secretary is satisfied that there will no longer be any such failure to comply. Until he is so satisfied he shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure).

42 U.S.C. § 1396c. As does FERPA, Title XIX authorizes the withholding or termination of federal funding for the administration of the State Plan only upon a finding that the State has failed to "comply substantially" with the Plan.[2] For individuals "whose claim[s] for medical assistance under the plan is denied or is not acted upon with reasonable promptness," Congress contemplated "an opportunity for a fair hearing before the State agency." 42 U.S.C. § 1396a(a)(3). Thus, like FERPA, Title XIX reflects an aggregate rather than an individual focus. See Gonzaga, 122 S. Ct. at 2278.

In sum, even if the Court were to accept Plaintiffs' arguments that the specific statutory provisions on which they rely, considered in isolation, confer an enforceable individual right, those arguments give way when the individual sections are considered within the "text and structure" of Title XIX as a whole. Plaintiffs' arguments fail for additional reasons as well.

First, Plaintiffs apparently attempt to glean individual focus from the regulations that apply to ICF/MR services. See Plaintiffs' Memorandum at 7. Even if this Court considers it appropriate to entertain these regulations in assessing the enforceability of the statutory

---

[2] The elided language of the section also authorizes the Secretary to withhold federal funding if the State Plan "no longer complies with . . . section 1396a." Plaintiffs here do not allege that the State Plan does not comply with Section 1396a. See Complaint at ¶¶ 52-53.

provisions, in light of South Camden Citizens in Action v. New Jersey Dep't of Env. Protection, 274 F.3d 771 (3d Cir. 2001), cert. denied, 122 S. Ct. 2621 (2002), the regulations provide no support to Plaintiffs. Contrary to Plaintiffs' suggestion, the regulations create no individual entitlements in recipients but instead impose conditions of participation on facilities. See 42 C.F.R. Subpart I, Conditions of Participation for ICFs/MR (§§ 483.400-.480). Because these regulations focus on the entity regulated rather than on individual rights, like the FERPA provision in Gonzaga, they cannot be interpreted to confer individual rights. See Gonzaga 122 S. Ct. at 2277 (quoting Alexander v. Sandoval, 532 U.S. 275, 289 (2001)) ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons'")(citations omitted).

     Plaintiffs also overstate the impact of the "Suter Amendment," which they quote only in part, in analyzing the enforceability of the rights claimed here. See Plaintiffs' Memorandum at 14-15. Picking up where Plaintiffs left off, the Amendment as enacted provides:

> . . . . This section is not intended to limit or expand the
> grounds for determining the availability of private actions
> to enforce State plan requirements other than by overturning any
> such grounds applied in Suter v. Artist M., 112 S. Ct. 1360 (1992),
> but not applied in prior Supreme Court decisions respecting such
> enforceability; . . .

42 U.S.C. § 1320a-2; see also id. § 1320a-10. Rather than reflecting a congressional "understanding that some provisions of the Social Security Act are enforceable through private lawsuits," Plaintiffs' Memorandum at 15 n.6, the Suter Amendment reflects congressional intent that the enforceability issue be decided in accordance with the Supreme Court's instruction. With the Court's recent reemphasis of the need for congressional intent "to confer individual rights" in Gonzaga, any assistance that the Suter Amendment might afford this Court is at best questionable.

The decision in Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990), on which Plaintiffs also rely, see Plaintiffs' Memorandum at 15-16, is of similarly questionable assistance. In Wilder, the Court analyzed the Boren Amendment in isolation and gave no consideration to the context provided by the text and structure of the preliminary provisions of Title XIX. See 496 U.S. at 505-20. Gonzaga teaches that such consideration is critical to determining whether a federal statute creates an enforceable individual right.[3] Concededly, the Court in Gonzaga did not overrule Wilder, but the reasoning in Wilder must be tempered by the Court's subsequent analysis in Gonzaga, see 122 S. Ct. at 2274, and the holding itself is of limited continuing effect given the repeal of the Boren Amendment. See supra n.3.

Plaintiffs' reliance on the recent decision of the Third Circuit in Pennsylvania Pharmacists Ass'n v. Houstoun, 283 F.3d 531 (3d Cir. 2002), petition for cert. filed, 70 U.S.L.W. 3776 (June 7, 2002)(No. 01-1789)("PPA"), is also misplaced for several reasons. See Plaintiffs' Memorandum at 16-17.[4] First, anything the Third Circuit wrote about recipients is dictum, since no recipients participated as plaintiffs in that case. See 283 F.3d at 532 (identifying plaintiffs). Second, as Plaintiffs note, the Court in PPA considered the enforceability of Section 1396a(a)(30)(A), an entirely different provision of Title XIX with entirely different language.

Third, Plaintiffs overstate what the Court did write, even in dictum. The Court did not

---

[3] To the extent that the Wilder Court relied on the legislative history as additional support for its conclusion that health care providers could sue to enforce the Boren Amendment, see 496 U.S. at 516-19, that history changed dramatically with the repeal of the Boren Amendment in the Balanced Budget Act of 1997, Pub. L. 105-33, § 4711(a), 111 Stat. 251, 507-08. See H.R. Rep. No. 149, 105th Cong., 1st Sess. 589, 591 (1997) (committee's intention is that "following enactment of this Act, neither this nor any other provision of [42 U.S.C. § 1396a] will be interpreted as establishing a cause of action for hospitals and nursing facilities relative to the adequacy of the rates they receive").

[4] The other cases on which Plaintiffs seem to rely are similarly unavailing. In none of the cases that Plaintiffs cite in their Memorandum at 6-7 n.2, for example, did the courts address the threshold issue whether the statutory provisions at issue there are privately enforceable.

"emphasize[ ] that the . . . provision [at issue] could be enforced by Medical Assistance recipients." Plaintiffs' Memorandum at 17 (citing 283 F.3d at 543-44). Instead, the Court wrote that "Medicaid recipients plainly satisfy the intended to-benefit requirement and are thus potential plaintiffs." 283 F.3d at 544. The Court did not address, and therefore expressed no opinion on, whether and when recipients would satisfy the other two components of the pre-Gonzaga three-part test.

Finally, although the Third Circuit did presage the decision in Gonzaga by adopting the same analysis applied in implied right of action cases, the Court nonetheless reverted to the pre-Gonzaga "intended to benefit" language when it suggested that Medicaid recipients are "potential private plaintiffs." See 283 F.3d at 544. As already discussed, the Supreme Court emphatically rejected the "intended to benefit" construct in Gonzaga. See 122 S. Ct. at 2275 ("it is *rights*, not the broader or vaguer 'benefits' or 'interests' that may be enforced" under Section 1983). When squarely presented with the issue of whether recipients have an enforceable individual right under any provision of Title XIX, the Third Circuit will have to analyze the issue anew, applying the clarification provided in Gonzaga.

In sum, Plaintiffs have failed to show that Sections 1396a(a)(10)(A), 1396a(a)(31), and 1396d(15), read either separately or in tandem, create an enforceable individual right to ICF/MR services. As the Secretary noted in Defendant's Memorandum at 7-8, and as discussed below, the Court need not reach the broader issue in order to dispose of Plaintiffs' claims here, however. Because Plaintiffs have asserted a right that exists nowhere in the language of the statute, the Court should dismiss the Complaint for that reason alone.

### B. Title XIX Does Not Confer an Enforceable Right to Small, Community-Based ICFs/MR.

Although Plaintiffs in the memorandum have stated that they "will establish that Defendant has never offered [them] any ICF/MR services in any type of setting," Plaintiffs' Memorandum at 20, the Complaint is replete with allegations of entitlement under Title XIX to small, community-based ICF/MR services. See Complaint at ¶¶ 2, 21, 32, 40, 64, 66, 70, 71-75. Having become familiar with the Supreme Court's decision in Gonzaga, Plaintiffs now seek to recast their claim as a right to ICF/MR services, leaving to "the merits" a consideration of their claim of entitlement to small, community-based ICF/MR services. The belated assertion that this action is about Plaintiffs' alleged unmet requests for access to "ICF/MR" services is belied by the express demands in the Complaint for "small, community-based ICF/MR services." This court should reject Plaintiffs' attempt to mischaracterize their claim of statutory entitlement to community residential retardation services as a remedy, when Congress has declined to establish an enforceable right to those services.

Other than stating the obvious general legal conclusion, Plaintiffs do not explain or otherwise provide support for their proposition that the claim of a right to community-based residential services is a remedy as opposed to a right they have the burden of establishing is available to them under Title XIX.[5] Certainly, the determination of the nature and extent of remedies available under a statute is "'analytically distinct' from the issue of whether such a

---

[5] The decision in Parry ex rel. Parry v. Crawford, 990 F. Supp. 1250 (D. Del. 1998), for example, in addition to having been decided before Gonzaga, see Plaintiffs' Memorandum at 17, is distinguishable and therefore inapposite. In Parry, the court with little analysis concluded that the plaintiff had an enforceable right to ICF/MR services for persons with "related conditions." Id. at 1255. Unlike the services in small, community-based ICFs/MR to which Plaintiffs claim entitlement here, ICF/MR services for persons with "related conditions" are explicitly included in the statutory definition of ICFs/MR. See 42 U.S.C. § 1393d(d) (defining ICF/MR as an "institution . . . for the mentally retarded or persons with related conditions").

- 9 -

right exists in the first instance." Franklin v. Gwinnett County Public Schs., 503 U.S. 60, 65-66 (1992) (quoting Davis v. Passman, 442 U.S. 228, 239 (1979)).  In deciding whether a right exists, a court must examine the "text and history of a statute to determine whether Congress intended to create a right of action."  503 U.S. at 66 (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 575-76 (1979)).  The "initial inquiry" is always "whether a statute confers any right at all."  Gonzaga, 122 S. Ct. at 2276.

In asserting an entitlement to community-based ICF/MR services, Plaintiffs provide no analysis of the text and structure or history of the provisions of Title XIX on which they rely.  Not surprisingly, neither the text and structure nor the history of the provisions supports any claim of a right to community-based ICF/MR services.  Either in listing ICF/MR services as an optional service that a State may include in its State Plan or in defining the service itself, Title IXI does not expressly or implicitly mention, or refer or relate to, "small, community-based" ICFs/MR.  See 42 U.S.C. §§ 1396d(a)(15), 1396d(d).

Consistent with the telling absence of any textual support for a right (or even an arguable "remedy") to community-based ICF/MR services, the history of these provisions likewise dispels any notion of congressional intent to confer a right to such services on Plaintiffs.  The ICF/MR provisions were added to Title XIX in 1971 and have remained unchanged since then.[6]  It was not until 1981 that Congress for the first time authorized the states to obtain federal matching funds for the development and operation of small, community-based residential as well as non-residential services that formerly could qualify for federal funds only in institutional settings.  See 42 U.S.C. § 1396n(c).  In amending Title XIX in 1981, Congress authorized the Secretary of Health and Human Services to grant States "waivers" of certain provisions of Title XIX to

---

[6] Pub. L. 92-223, § 4(a)(1)(C), 85 Stat. 809.  Section (a)(16) was redesignated as (a)(15) the following year. Pub. L. 92-603, § 299B(a), 86 Stat. 1460.

develop "home- and community-based" services to serve Medicaid recipients such as Plaintiffs in smaller, more "homelike" settings. The Supreme Court has expressly recognized this congressional preference in Title XIX for the provision of services in institutional settings such as ICFs/MR until the 1981 amendment that permitted states to apply for home- and community-based waiver services. See Olmstead v. L.C., 527 U.S. 581, 601 (1999).[7]

The provisions on which Plaintiffs rely to support their claim of entitlement simply lack the requisite textual and historical support necessary to confer an individual right. Plaintiffs understandably prefer and may benefit from placement in small, community-based ICFs/MR, but that is not the test that governs this Court's consideration of whether the statute is privately enforceable. The question, according to the Supreme Court in Gonzaga, "is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." 122 S. Ct. at 2276 (citation omitted).[8]

Plaintiffs have failed to establish a right to small, community-based ICF/MR services. Accordingly, Count I of the Complaint must be dismissed.

## II. The Reasonable Promptness Provision of Title XIX Imposes a Generalized Duty That Benefits Plaintiffs But Confers No Enforceable Individual Right on Them.

In an effort to salvage Count II of the Complaint, Plaintiffs assert that Section (a)(8)

---

[7] The Complaint does not refer to or base a claim on access to "waiver" programs funded by the Secretary.

[8] Plaintiffs attempt to analogize a hypothetical dispute over access to specialty physician services to support the contention that their claim of entitlement to small, community-based ICF/MR services is but a question of remedy rather than a question of an enforceable right. See Plaintiffs' Memorandum at 20 n. 8. The flaw in Plaintiffs' analogy is that, as Plaintiffs themselves note at p. 2 of their memorandum, eligibility for ICF/MR services requires only a diagnosis of mental retardation and a physician recommendation for care, whether those services are provided in large and small settings. Various physician services, by contrast, are distinguishable based on concepts such as "scope of practice" and "board certification," which do not apply to ICFs/MR. An ICF/MR, whether large or small, once licensed, is authorized to provide ICF/MR services.

contains the "right creating" language along with the individual (as opposed to aggregate) focus essential to a finding of enforceability under Gonzaga. Plaintiffs' Memorandum at 22-29.[9] In support of the rights-creating language, Plaintiffs urge that Section (a)(8) "focuses expressly on the individuals and benefits to which they are entitled." Plaintiffs' Memorandum at 23. Other than asserting a general conclusion, Plaintiffs offer no explanation of how the "reasonable promptness" provision is materially different from the "reasonable efforts" and "substantial compliance" provisions determined by the Supreme Court to not constitute "rights-creating" language. See Suter v. Artist M., 503 U.S. 347, 363 (1992); Blessing v. Freestone, 520 U.S. 329, 343 (1997).

Contrary to Plaintiffs' assumption, the term "reasonable promptness" is equivalent to a "rather generalized duty on the State, to be enforced not by private individuals, but by the Secretary in the manner [of reducing or eliminating payments]." Gonzaga, 122 S. Ct. at 2274 (quoting Suter, 503 U.S. at 363). Section (a)(8) focuses principally on what a State must do rather than creating a right or protections for individuals and in that respect cannot be interpreted as conferring on Plaintiffs an individual right. Gonzaga, 122 S. Ct. at 2277 (citing Alexander v. Sandoval, 532 U.S.275, 289 (2001)). Plaintiffs' view that Section (a)(8) contains an "individual" as opposed to "aggregate" focus also is unsupported by the text of the section. Unlike the

---

[9] Curiously, Plaintiffs now maintain that Section (a)(8) contains "two separate requirements" and that they "allege only a violation of the reasonable promptness provision." Plaintiffs' Memorandum at 21. Contrary to Plaintiffs' assertion, this statutory provision is not comprised of two separate and independent components. To even allege a denial of the receipt of a medical assistance service with "reasonable promptness," one must first apply for the service. The named Plaintiffs nowhere allege that they have applied for and have been denied ICF/MR services, as opposed to small, community-based ICFs/MR. Given their asserted preference for "small, community-based" ICF/MR services, Plaintiffs' failure is not surprising but is nonetheless fatal to their claim even being considered. Actual application for a medical assistance service - here, ICF/MR services - constitutes a necessary prerequisite to asserting a denial of the reasonably prompt receipt of the service.

"individually focused terminology of Titles VI [ of the Civil Rights Act of 1964] and IX [ of the Education Amendments of 1972] ('no person shall be subjected to discrimination')," Gonzaga, 122 S. Ct. at 2277, Section (a)(8) contains the much more general, aggregate-type reference to "all individuals" similar to the language at issue in Blessing.  See Gonzaga, 122 S. Ct. at 2278 (citing Blessing, 520 at 335).

    Likewise, Plaintiffs' reliance on the decision by the Eleventh Circuit in Doe v. Chiles, 136 F.3d 709 (11th Cir. 1998), in which the court held that Medicaid recipients could sue under Section 1983 to enforce Section (a)(8), is also misplaced given the Supreme Court's decision in Gonzaga.  The Doe court expressly and unmistakably applied a test that it articulated as focusing on whether this statutory provision "benefits" Medicaid recipients.  Id. at 715. Frankly, the Doe Court, for all of the reasons explained above and as set out by the Supreme Court, misapplied the "rights-creating" test as developed by the Supreme Court in Wilder, Suter and Blessing, and most certainly as restated in Gonzaga, by focusing broadly on whether the plaintiffs would "benefit" from Section (a)(8) rather than analyzing whether the text and structure of that section reflect an unambiguous intent by Congress to create individual rights.  When compared to the statutory provisions at issue in Wright v. City of Roanoke Redevelop. & Hous. Auth., 479 U.S.418 (1987) (express right to mandatory payment to an individual family based on the family's income), in Wilder (explicit, objective monetary entitlement for "individual" hospitals) and, as noted by the Court in Gonzaga, in Title VI and Title IX, the text and structure of Section (a)(8) fall far short of the type of spending legislation language considered by the Court to give rise to enforceable rights.

    Because Plaintiffs have failed to establish that Section (a)(8) creates an enforceable right, Count II of the Complaint should be dismissed.

## **CONCLUSION**

For the reasons set forth above, and in the Defendant's Memorandum, Secretary Houstoun requests the Court to dismiss the Complaint with prejudice.

                              Respectfully submitted,

                              _____

                              John A. Kane
                              Chief Counsel
                              Attorney I.D. No. 24795
                              Office of General Counsel
                              Department of Public Welfare
                              3d Floor West, Health & Welfare Building
                              Harrisburg, PA   17120
                              717-783-2800

                              _____

                              Doris M. Leisch
                              Chief of Litigation
                              Attorney I.D. No. 42375
                              Office of General Counsel
                              1700 State Office Building
                              1400 Spring Garden Street
                              Philadelphia, PA   19130
                              215-560-2192

DATE:  August 16, 2002                       Counsel to Defendant Houstoun

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HASSON SABREE, by His Mother** | : | |
| **and Next Friend, Hana Sabree, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | **Civil Action No. 02-3426** |
| | : | **Class Action** |
| **FEATHER O. HOUSTOUN, in Her** | : | |
| **Official Capacity As Secretary** | : | |
| **of the Department of Public** | : | |
| **Welfare of the Commonwealth** | : | |
| **of Pennsylvania,** | : | |
| **Defendant** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint was served today by first class mail, postage prepaid, on the following counsel:

Ilene W. Shane, Esquire
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA  19107

Stephen A. Whinston, Esquire
1622 Locust Street
Philadelphia, PA  19103

Stephen F. Gold, Esquire
125 South 9th Street, 7th Floor
Philadelphia, PA  19106

DATE:  August 16, 2002

_____
Doris M. Leisch